Syllabus.

## Richmond.

## DAVIS BAKERY, INCORPORATED, v. A. S. DOZIER.

September 25, 1924.

1. PROCESS—*Service of Process—Disclaimer of Interest by Persons Served—Case at Bar.*—In the instant case a return of process was to the effect that it was served on one P., a director in defendant corporation, and that P. denied any connection with defendant corporation either directly or indirectly at the time and place of service. Inspection showed the return to be regular upon its face.

   *Held:* That the disclaimer, made by P., amounted to nothing; was surplusage and no part of the return. At the most, it is a statement out of court of a fact which might or might not be proven at the hearing. The return of the officer is to be taken as true.

2. APPEARANCE—*Waiver of Defects in Process and Service—Case at Bar.*—In the instant case defendant, after demurring and pleading, asked leave of the court to withdraw the plea and demurrer and for leave to appear specially and move to quash the writ because it showed on its face that there was no legal service.

   *Held:* That the court did not err in refusing this request, as by appearing to the action the defendant had waived all defects in the process and in the service thereof.

3. MASTER AND SERVANT—*Action by Servant for Personal Injuries—Demurrer.*—Where an amended declaration in any view of the case set out an action by a servant against his master for personal injuries it was good upon demurrer.

4. INDEPENDENT CONTRACTORS—*Definition.*—An independent contractor may be defined as one who, in the course of an independent occupation, prosecutes and directs the work himself, using his own methods to accomplish it.

5. INDEPENDENT CONTRACTORS—*Liability of Owner Generally.*—Generally, where an independent contractor is employed to perform a work, lawful in itself and not intrinsically dangerous, the owner, if he is not negligent in selecting the contractor, is not liable for the wrongful acts or negligence of such contractor. To incur liability it must appear that he either exercised or reserved the right to exercise control over the work, and had the power to choose, direct, and discharge the employees of the contractor. In general, it may be

said that the liability of the owner depends upon whether or not it has retained control and direction of the work.

6.  INDEPENDENT CONTRACTORS—*Corporations—Employing one to Paint a Skylight—Case at Bar.*—A contractor employed by a corporation to paint a skylight upon a building owned by the corporation, where the corporation retained no manner of control over the premises, or over the manner in which the work was to be done, and was guilty of no negligence in selecting the contractor, is an independent contractor.

7.  INDEPENDENT CONTRACTOR—*Rights and Liabilities between Owners and Employees.*—There are no contractual rights and liability between owners and employees of independent contractors. Such as exist grow out of other principles.

8.  INDEPENDENT CONTRACTORS—*Duty of Owner to Servant of Independent Contractor.*—An employer ordinarily owes only such duties to the servant of an independent contractor as he does to a stranger, unless the work is a nuisance, unlawful, or intrinsically dangerous, provided he is not negligent in selecting the contractor.

9.  NEGLIGENCE—*Invitees—Invitation Inferred.*—An invitation will usually be inferred when one is present on the premises of another for the common interest and mutual advantage of the parties, but common interest and mutual advantage do not always of themselves constitute an invitation, as, for example, where one goes into a stranger's house to put out a fire that threatens, his own.

10.  INDEPENDENT CONTRACTOR—*Servant of Contractor as Invitee or Licensee.*—The servant of an independent contractor who goes upon a building to do work called for by the contract is an invitee, that is to say, he is invited to go to the particular place at which the work is to be done, to go in a manner contemplated by the parties or warranted by well established custom, and do the work without taking any unnecessary risks. Any violation of these implied conditions makes him at the most a licensee and not an invitee.

11.  NEGLIGENCE—*Invitee—Care Owed to Invitee.*—In dealing with the duties due to an invitee, regard must be given to the character of the invitation. They, at times, are entitled to a high degree of protection. Where the invitation is wide and mutual advantage becomes evident upon the most casual inspection, the liabilities of the owner are correspondingly extended. On the other hand, when the invitation is restricted so also is the liability.

12.  INDEPENDENT CONTRACTOR—*Injury to Employees—Liability of Owner of Building—Case at Bar.*—In the instant case plaintiff, an employee of an independent contractor, was injured while painting a skylight on a building owned by defendant. Plaintiff and his helper placed a plank across the skylight upon which he rested his weight and that of his helper while at work.

*Held:* That while plaintiff was on the roof of the building as an invitee, he did not go upon the skylight in that capacity nor take his helper with him, and this notwithstanding the fact that it might have been more convenient to so do his work, the evidence of custom not being sufficient to establish it. The court will not assume an invitation was extended to the plaintiff to do work in a dangerous way, when it was possible to follow another method involving no danger at all.

13. INDEPENDENT CONTRACTORS—*Injury to Employees—Liability of Owner of Building—Case at Bar.*—In the instant case plaintiff, the employee of an independent contractor, was injured while painting a skylight on the roof of defendant's building and through the collapse of the skylight upon which he and his helper were resting their weight. Defendant owed to plaintiff no more than ordinary care and an ordinary inspection of the roof and skylight would have revealed no defect. Therefore there was no liability upon defendant to plaintiff for failing to make an inspection. Defendent had a right to rely on the guarantee of the builder of the skylight, a trustworthy contractor, and of course was not negligent in so doing. Without negligence there could be no **recovery.**

Error to a judgment of the Circuit Court of the city of Norfolk, in an action of trespass on the case. Judgment for plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Page, Page & Page,* for the plaintiff in error.

*H. G. Cochran,* for the defendant in error.

HOLT, J., delivered the opinion of the court.

This is an action brought on account of personal injuries sustained by the plaintiff in which a recovery was had in the court below. For convenience the plaintiff below will be designated here as the plaintiff, and the defendant below as the defendant.

The facts in this case deemed material are as follows: Davis Bakery, Incorporated, in 1919, owned a building in the city of Norfolk, fronting on Brewer street and extending through to Bank. This building it had used as

a bakery, but it had abandoned that work and gone out of business.    Through negotiations begun early in August of that year, it leased it to the American Grocery and Baking Company, Incorporated.    The lease bears date October 1, 1919, and on its face went into effect as of that date.    Possession, however, was turned over to the lessee about ten days before this.    For reasons which it is not necessary to detail, Charles Davies, president and director of the lessor company, in September, employed one W. B. Mueller to paint a skylight thereon. Mueller was an experienced mechanic and contractor who had for fifty years been engaged on work of a kindred character.    He employed the plaintiff to do this work and one William Sturgis to assist him.    This skylight is of the ordinary A type, as appears from a photograph in the record, and was built by the Bohn Roofing Company, for the defendant, under a ten years' guarantee, a little more than four years before the accident complained of.    The base of this A rests on a box-like structure about four feet high.    From its eave to its apex there is a rise of one foot, eight inches; its base is seven feet, ten inches.    The length does not appear, but the skylight proper was of glass held by metal ribs twenty-one inches apart.    These metal ribs were of a lighter gauge than is ordinarily used in structures of this kind, but this could not be seen in an ordinary inspection.    They were rusted at the base of eaves and the structure to which they were attached or on which they rested, and which itself was a wooden frame covered with tin, was in a rotting condition.

Across this skylight the plaintiff placed a plank upon which he rested his weight while at work, and his helper, Sturgis, at the same time went upon this skylight on the other side so that it was called upon to bear the weight of both men at once.    While they were thus engaged it gave away.    The plaintiff fell to the floor and was in-

jured.   This accident, the declaration charges, occurred.
on the first of October, 1919.   The plaintiff testified
that the defects to which it is attributed could not be
seen by ordinary inspection, though evidence on his be-
half was introduced to show they were open and ob-
vious.   The defendant itself knew nothing about this.

[1, 2] A number of errors are assigned.   For conve-
nience the second will be considered first.   It is as fol-
lows:

"The defendant, after demurring and pleading, asked
leave of the court to withdraw the plea and  demurrer
and for leave to appear specially and move to quash the
writ because it shows on its face that it was not legal
service on the Davis Bakery, Inc., which motion, as will.
appear from the record, was denied and the defendant.
excepted and assigns the action of the court in this be-
half as error No. 2."

The service itself is as follows:

"By direction of the attorney for the plaintiff, I, this.
20th day of September, 1920, served a copy hereof on
I. A. Page, director of Davis Bakery, Inc., in the city of
Norfolk, Va., where he resides and his place of business
is located, and at the time such service was made I. A.
Page denied any connection with Davis Bakery, Inc.,
either directly or indirectly, and at the same time and
place I executed a copy hereof on I. A. Page, individu-
ally.

"Wm. M. Hannan, city sergeant,
"By C. H. Tumbleson, deputy."

This service the defendant says is absolutely void, and
that this can be shown at any time during the trial, cit-
ing Burks' Pleading and Practice, 2nd Ed., pp. 318-319;
*Johnston* v. *Pearson*, 121 Va. 453, 93 S. E. 640.   An in-
spection shows it to be regular upon its face; section
6063, Code of 1919.   The disclaimer made by Mr. Page
amounts to nothing.   It is surplusage and no part of

the return.    At the most it is a statement out of court
of a fact which might or might not be proven at the
hearing.    The return of the officer is to be taken as true.
*Preston* v. *Kindrick*, 94 Va. 760, 27 S. E. 588, 64 Am. St.
Rep. 777.    As a matter of fact, Mr. Page, himself, ad-
mitted during the taking of his testimony that he was a
director of this corporation before it went out of active
business.    Moreover, in *New River Mineral Co.* v.
*Painter*, 100 Va. 507, 42 S. E. 300, the court said:    "It
is a well established rule of practice that by appearing
to the action the defendant waived all defects in the pro-
cess and in the service thereof.    The decisions go fur-
ther and imply such a waiver from the defendant's tak-
ing or consenting to a continuance as fully as they do
from his pleading to the action.    The subject of the
writ is to apprise the defendant of the nature of the pro-
ceeding against him.    His taking or agreeing to a con-
tinuance is evidence of his having made himself a party
to the record, and of his having recognized the case as in
court.    It is too late afterwards for him to say that he
has not been brought regularly into court."    This as-
signment of error is without merit.

[3] Assignments one and three deal with the demur-
rers to the original and amended declarations while the
eighth is based upon the fact that the trial court refused
to set aside the verdict of the jury as contrary to the law
and the evidence.    The amended declaration in any
view of the case sets out an action of master and servant
and so is good upon demurrer.    The major defense
stressed is that the defendant was under no contractual
relation with the plaintiff and owed him no duty.    This
is distinctly set up in the eighth assignment of error and
will be considered there.    The demurrers will not be
considered further.

[4, 5] The law relative to independent contractors is
thus stated in *Talley* v. *Drumheller*, 135 Va. 186, 115
S. E. 517:

"An independent contractor may be defined as one who, in the course of an independent occupation, prosecutes and directs the work himself, using his own methods to accomplish it. Generally where an independent contractor is employed to perform a work, lawful in itself and not intrinsically dangerous, the company, if it is not negligent in selecting the contractor, is not liable for the wrongful acts or negligence of such contractor. It must appear that it either exercised or reserved the right to exercise control over the work and had the power to choose, direct and discharge the employees of the contractor. In general it may be said that the liability of the company depends upon whether or not it has retained control and direction of the work."

[6] That Mueller was an independent contractor and that the plaintiff was his employer is proven in the evidence. It is clear that defendant retained no manner of control over the premises or over the manner in which the work was to be done, and was guilty of no negligence in selecting its contractor.

[7] There are no contractual rights and liability between owners and employees of independent contractors. Such as exist grow out of other principles. This case differs sharply from that character of cases represented by *Walton, Witten & Graham* v. *Miller*, 109 Va. 210, 63 S. E. 458, 132 Am. St. Rep. 908, and by *Vickers* v. *Kanawha & W. V. R. Co.*, 64 W. Va. 474, 63 S. E. 367, and 20 L. R. A. (N. S.) 793, 131 Am. St. Rep. 929. There employees of the owner were injured through the negligence of the independent contractor. In such cases the owner or master was under a non-assignable obligation to use ordinary care to furnish his employees a reasonably safe place at which to work. This is an obligation which is written into and forms a part of every contract between master and servant, but in the instant case it was not a servant of the master who was injured;

we are dealing with an injury suffered by an employee of an independent contractor.

For the plaintiff it is said that he was an invitee and that the defendant owed him the duty of prevision, preparation and lookout; that it was charged with exercising ordinary care to see that the premises upon which he was invited to work were in a reasonably safe condition for his use to the extent that he was invited to use them.

For the defendant it is said that the plaintiff was but a bare licensee and that it owed him no duty save not to wilfully or wantonly expose him to known danger.

[8] Subject to an exception afterwards to be noted, an employer ordinarily owes only such duties to the servant of an independent contractor as it does to a stranger, unless the work is a nuisance, unlawful or intrinsically dangerous, provided he is not negligent in selecting the contractor.

"The principal employer may be held liable for injuries received by a servant of the contractor in the course of his work, if the circumstances were such that a stranger would have been entitled to maintain an action. But he cannot be held responsible for such injuries, on the ground of having resulted from a breach of one of those duties which the law has imposed upon masters for the benefit of their own servants." Labatt on Master and Servant, section 38.

In support of this is cited *Olive* v. *Whitney Marble Co.*, 103 N. Y. 292, 8 N. E. 552; *Rankin* v. *Merchants & M. Transp. Co.*, 73 Ga. 229, 54 Am. Rep. 874; *Butler* v. *Lewman*, 115 Ga. 752, 42 S. E. 98; *Busby* v. *Anderson Water, Light & P. Co.*, 136 Fed. 156, 69 C. C. A. 154. See also *Southern Oil Co.* v. *Church*, 32 Tex. Civ. App.

325, 74 S. W. 797, 75 S. W. 817; Sherman & Redfield on Neg. sec. 175.

In 26 Cyc., page 1568, it is said:

"The liability of the contractee to the servants of the contractor is not as extensive as his liability to third persons; that is, the act may be such as to render the contractee liable to third persons, although it would not make him liable to a servant of the contractor. In order to make the owner liable to the employees of an independent contractor for injuries received by the employees, there must be some negligence on the part of the owner. Where the real cause of the injury is the negligence of a servant of the contractee working together with the servants of the contractor, the contractee is liable. Except where there are statutory provisions to the contrary, the owner of the real estate does not ordinarily owe to a person employed on his premises, in the service of an independent contractor, the duty to furnish a safe place for work, and for omission to do so he is not liable in damages. But the owner may be liable, under particular circumstances, where a duty devolving on him is not fulfilled."

While Thompson on Negligence, section 680, lays down the rule as follows:

"On the other hand, the servant of the contractor must be deemed to be on the premises of the proprietor by invitation, express or implied; and therefore owes him the same duty of guarding him against the consequences of hidden dangers on the premises that a proprietor would in any case owe a guest, a customer or any other person coming by invitation on his premises." See also sections 679 and 979.

*Pettyjohn & Sons* v. *Basham*, 126 Va. 72, 100 S. E. 813, is valuable authority on the point in issue. Pettyjohn & Sons contracted with the owners to build an ad-

dition to a hotel in Roanoke and employed a subcontractor to do the plumbing.    Basham, who was an employee of the subcontractor, was injured by reason of a defect in a scaffold while going upon the roof to do necessary work there.    It was held that it was not necessary for him to use this scaffold, but that there was already provided for him another safe and convenient method of access to the roof.    The court, in substance, said that since he used a method of access to his work not contemplated in his employment he was at the most a licensee, but that had he used that means of approach in contemplation when the subcontract was let he would have been an invitee and entitled to that prevision, preparation and lookout afforded by the exercise of ordinary care on the part of the owners to see that the premises to which he was invited to work were in a reasonably safe condition.    In other words, this case holds that an employee of a subcontractor who is working in the usual and ordinary manner to be expected from his employment is on the premises as an invitee and entitled to protection as such.

[9] That opinion, read in connection with the dissenting opinion, makes it entirely clear that if it had been in the contemplation of the parties that the scaffold should have been used as a means of access to the roof, or if it had been the only means, or if custom had warranted its use, then the plaintiff would have been an invitee present for the common interest and mutual advantage of the parties and entitled to recover.    An invitation will usually be inferred when one is present under such conditions.    *Bennett* v. *Railroad Co.*, 102 U. S. 577, 26 L. Ed. 235, but we do not intend to say that common interest and mutual advantage always of themselves constitute invitation.    One might go into a stranger's house to put out a fire that threatened his

own. Presence in such circumstances would be to the advantage of everybody, but it could not be said that there was an invitation.

[10] It is true that Basham is described as being a subcontractor, but he was also an independent contractor.

The following cases support the principles laid down in the *Pettyjohn Case* as we construe it, and establish the proposition that the servant of an independent contractor who goes upon a building to do work called for by the contract is an invitee; that is to say, he is invited to go to the particular place at which the work is to be done, to go in a manner contemplated by the parties or warranted by well established custom, and to do the work without taking any unnecessary risks. Any violation of these implied conditions makes him at the most a licensee and not an invitee: *Weber* v. *City Water Works, etc.*, 206 Ill. App. 417; also *Carr* v. *Wallace Laundry Co.*, 31 Idaho 266, 170 Pac. 107; *Brown* v. *Steel Co.*, 272 Pa. 231, 116 Atl. 546; *McLean* v. *Studebaker Co.*, 221 N. Y. 475, 117 N. E. 951, 1 A. L. R. 1551; *Houlihan* v. *Sulzberger Co.*, 282 Ill. 76, 118 N. E. 429; *Stevens* v. *United Gas Co., etc.*, 73 N. H. 159, 60 Atl. 848, 70 L. R. A. 119; *Plummer* v. *Dill*, 156 Mass. 426, 31 N. E. 128, 32 Am. St. Rep. 463; 14 R. C. L. 82; and *Indermaur* v. *Dames* (L. R.), 1 C. P. 274; *Id.* (L. R.), 2 C. P. 311.

[11] In dealing with the duties due to an invitee, regard must be given to the character of the invitation. They, at. times, are entitled to a high degree of protection. By way of illustration may be cited *Richmond, etc., Ry. Co.* v. *Moore*, 94 Va. 493, 27 S. E. 70, 37 L. R. A. 258, and *Hospital of St. Vincent of Paul* v. *Thompson*, 116 Va. 101, 81 S. E. 13, 51 L. R. A. (N. S.) 1025. In the *Richmond Railway Case* the defendant was imme-

diately pecuniarily interested in increasing the attend-
ance at a park owned by it to which it was taking pas-
sengers.    In the *Hospital Case* one who brought a pa-
tient to the hospital was hurt.    If hospitals are to live
they must have patients and conditions must be such
that those who bring patients there may be able to do
so with reasonable safety to themselves, and so also
those cases in which customers going into shops have
been hurt by some defect of the premises.    In all such
cases the invitation is wide and mutual advantage be-
comes evident upon the most casual inspection.    The
liabilities of the owner are correspondingly extended.
Just as the invitation is wide in some circumstances, so
it is restricted in others.

[12] We have no difficulty in reaching the conclusion
that while Dozier was on the roof as an invitee he did
not go upon the skylight in that capacity and certainly
he was not invited to go upon it and take his helper with
him, and this notwithstanding the fact that it might
have been more "convenient" for Dozier to do so than
to do his work from the roof.    The evidence of custom
is not sufficient to establish it, just as it was insufficient
in the *Pettyjohn Case* and in *Brown* v. *Steel Co., supra.*
The court will not assume an invitation was extended to
the plaintiff to do work in a dangerous way, when it was
possible to follow another method involving no danger
at all.

In the contract of employment there was no sugges-
tion on the part of the owner as to how the work should
be done.    The manner of its execution was left to the
contractor and his employees. Dozier was invited to
do the work without suggestion as to the methods to be
adopted.    The effect in law of all of this may be stated
thus:    The defendant said to Dozier, come upon my
roof, look my skylight over, paint it, in doing the work

you are to be free to adopt your method without suggestion or interference from me.

[13] But should we take that view of the law for which plaintiff contends, the results would be the same, for in no aspect of the case was more than ordinary care due him. An ordinary inspection of this roof and skylight would have revealed no defect, this is the plaintiff's own statement, and so failure to make an inspection which would have revealed nothing adds no liability. There is nothing to suggest that the Bohn Roofing Company, who built this skylight, was not a trustworthy contractor. The owner had a right to rely upon its guaranty and of course was not negligent in doing so. Without negligence there can be no recovery.

Leaving for the moment this phase of this case, we will take up plaintiff's statement of conditions which led to the accident.

In *Massie* v. *Firmstone*, 134 Va. 450-462, 114 S. E. 652, 656, the court said:

"As a general rule when two or more witnesses introduced by a party litigant vary in their statements of fact, such party has the right to ask the court or jury to accept as true the statements most favorable to him. In such a situation he would be entitled to have the jury instructed upon his contention, or if there were a demurrer to the evidence, the facts would have to be regarded as established in accordance with the testimony most favorable to him. This is not true, however, as to the testimony which he gives himself. No litigant can successfully ask a court or jury to believe that he has not told the truth. His statements of fact and the necessary inferences therefrom are binding upon him. He cannot be heard to ask that his case be made stronger than he makes it, where, as here, it depends

upon facts within his own knowledge and as to which he has testified."

During the course of his examination, plaintiff testified as follows:

"Q. If there were any defects in the roof could Mr. Mueller have seen them?

"A. I could not tell you.   I don't know whether he did or not.

"Q. If you had looked could you have seen them?

"A. I didn't have to look.

"Q. Just answer my question.

"A. That is all I can tell you.   I didn't have anything to do with it as I told you.

"The court:   Just answer his question?

"The witness:   That is all I can tell you, your honor; I don't know.

"Mr. Cochran:   If you don't know just say so and if you do know tell him and let's get through.

"The witness:   I don't know.

"By a juror: Answer the questions by yes or no when I ask you.

"A. I told you, no.

"Q. I haven't asked you any yet.   Could you have seen any defect in that skylight if you had looked?

"A. I told you no, once.

"Q. You could not?

"A. No."

Assuming this to be true, an actual ordinary inspection of this skylight and of its tin covered support would have left the defendant as ignorant of true conditions as was the plaintiff.   In such circumstances there can be no recovery and this without regard to the particular angle from which one may view the case. And the result would be the same if we were to believe those witnesses for the plaintiff who testified that the

danger was open and obvious.   For these reasons the eighth assignment of error must be sustained.

Other assignments of error deal with the instructions. Since, under the provisions of section 6365 of the Code of 1919, a final judgment must be entered for the defendant, no good purpose could be accomplished by a review of them.   They present no novel propositions.

*Reversed.*