77 So.2d 249 (1955)
HICKORY HOUSE, Inc., a Florida corporation, Appellant,
v.
William Anderson BROWN, Appellee.
Supreme Court of Florida. Division B.
January 7, 1955.
Rehearing Denied February 1, 1955.
Dixon, DeJarnette & Bradford and Douglas M. Carlton, Miami, for appellant.
Murray Sams, Jr., and Phillip Goldman, Miami, for appellee.
*250 DREW, Justice.
This is an appeal from a final judgment in favor of the plaintiff in a personal injury case.
The complaint alleged that on or about September 25, 1951 the defendant Hickory House, Inc. operated a restaurant in Miami Beach, Florida and on or prior thereto employed a contractor to install air conditioning in the premises; that plaintiff Brown was an employee of the contractor and was on an interior roof in the premises engaged in the installation of said equipment at the time of his injury; that the defendant Hickory House owed the plaintiff, Brown, a duty to maintain the premises in a reasonably safe condition to work but that notwithstanding said duty, the defendant Hickory House so negligently maintained and failed to keep said interior roof in a proper state of repair and negligently failed to make reasonable, necessary and adequate repairs on said roof and the defendant failed to warn the plaintiff of the latent and concealed defects in said interior roof which were known to the defendant or by the exercise of reasonable care should have been known to the defendant but did so negligently permit the said condition to exist that as a proximate result the entire interior roof fell while the plaintiff was then and there standing on same while installing the air conditioning equipment resulting in grievous injuries to the plaintiff. The defendant resisted the claim on the ground that plaintiff was himself guilty of negligence which proximately contributed to his injuries in that he failed to exercise that degree of care which the circumstances demanded to inspect that portion of the premises upon which he was about to stand and that therefore having proximately contributed to his injuries, he was barred from recovery.
It is clear from the complaint that the gravamen of the complaint is that the defendant knew or by the exercise of reasonable care should have known of the defective condition of the interior roof but negligently failed to remedy the same and that said failure was the proximate cause of plaintiff's injury.
The undisputed evidence in the record shows that the Hickory House either leased or purchased the building many years prior to the date of the accident and that when they took over the possession of the same the interior roof or scaffold referred to in the complaint was in the premises and that it had not been structurally altered in any way since said time by the owners or agents of the Hickory House. There is an indication in the record that this roof or scaffold was constructed by the Army some time during the late war when they had possession of the building. The fact is clear from the record and not disputed that the structure was not built by the defendant Hickory House nor had it been altered by them. It is undisputed that such interior roof or scaffold had been used by the defendant over a long period of time for the purpose of storing on the top thereof certain doors and other articles with one supporting wall utilized primarily to block the view of a door leading into another part of the building. From the photographs in evidence and the admissions in the record it is obvious that the said interior roof and its supporting structure, located in what was principally a storage room, was not a part of the original building.
One side of the interior roof rested on and was supported by a 2 x 4 about four feet long which was nailed about eight feet above floor level to a concrete block wall by three cut nails. The opposite side of the roof was supported by a vertical wooden wall.
There is some dispute in the record as to whether the location of the air ducts on which the plaintiff Brown was working at the time of the injury was suggested or designated by the owner or the contractor but we do not think this point material to the determination of this case. It is undisputed that in constructing the air ducts used in connection with the air conditioning system most of the workmen had climbed *251 upon the interior roof and had used it to stand on in connection with the installation. The plaintiff himself testified that prior to the time that he climbed upon the roof to do work on the duct, he had observed the plumbers, the electricians and other workmen using the same.
In order to reach the duct upon which he was working, the plaintiff Brown climbed upon the roof and when he walked over to the edge close to the block wall during a time when the roof was occupied not only by himself but another workman, the 2 x 4 which was nailed into the concrete block wall by the cut nails gave way causing the roof to collapse and the plaintiff Brown to fall and receive injuries. An inspection of the 2 x 4 after it fell revealed that one cut nail had barely penetrated the wall while two had penetrated it only a short distance. It was conceded by all parties and established by the evidence that from outward appearances the 2 x 4 was properly fastened to the wall. There is nothing in this record to establish that the owners or agents of the Hickory House had any knowledge of any latent defect in the construction. On the other hand, every reasonable inference to be drawn from the evidence would lead to a contrary conclusion because such structure had been used for several years prior to the accident for storage and other purposes for which it was obviously designed and built; and had been entirely safe therefor. Moreover, it is not shown from the evidence nor can any lawful inference be drawn therefrom that the owners or agents of the Hickory House had any peculiar knowledge in the field of construction which would have placed them upon inquiry. On the other hand the plaintiff was a man of many years experience in various fields of construction and was regularly engaged in work requiring knowledge of such construction and proper construction and bracing of supports upon which he was required to work. He testified that when he went on the roof he saw nothing that would indicate to him it was unsafe to work on. In answer to a question he said: "I mean when I went up there it looked safe and it looked sound." He stated that he made a visual inspection and that it looked entirely safe to him.
The appellees here insist that the judgment must be affirmed and rely primarily on the authority of Hall v. Holland, Fla. 1950, 47 So.2d 889. The appellants maintain that under the same case we are required to reverse the judgment below. Appellants further contend that not only must the judgment in this case be reversed on the authority of Hall v. Holland, but that Bottom v. Rank, Fla. 1954, 70 So.2d 832, is squarely on point and unequivocally holds that the defendant under the circumstances shown here cannot as a matter of law be held liable for the injuries received by the plaintiff.
We direct our attention first to Hall v. Holland, supra [47 So.2d 889], and at the threshold we emphasize that a proper interpretation of the holding of that case requires a consideration of the theory of the negligence of the defendants relied upon in that case for recovery. The opinion states the negligence alleged to be:
"(1) remodelling the canopy supports without seeking expert advice and without investigating the manner in which the canopy was attached to the porch wall, and (2) failing to obtain a building permit in violation of a City Ordinance which, it is alleged, would have insured a safe construction, * * *."
In that case the evidence showed that Holland, the owner, employed Hall to paint his house and while Hall was thus engaged Holland removed two vertical posts which supported the outer corners of a roof over a porch and installed in their place two posts or braces running from the wall just below the roof at an angle of approximately 45 degrees to the outer edge of the roof thus creating a condition which in that case this court said would obviously result in horizontal stress and strain on the joists supporting the load over the angle brace. In other words we held that the defendant had superior knowledge of the *252 latent defect, because when he changed the type of construction he created a condition which would have required any prudent man, and did require him, to determine whether the canopy was fastened to the wall in such manner as to withstand the additional stress created by the new type of construction. Thus it was in the cited case that we held that if both parties were charged with the same degree of responsibility it would have been entirely proper to have given the charge "`If you find that by the exercise of reasonable care in inspecting the building the plaintiff and defendant each had the same knowledge of, or means of knowing, the danger which caused the injury to plaintiff, it will be your duty to find a verdict of not guilty.'" It is true in that case that we held the charge improper because the facts in that case showed, for the reasons which we have just pointed out, that a higher degree of responsibility rested upon the defendant as owner of the premises.
We unequivocally held in Hall v. Holland, supra, that it was the duty of the defendant to use reasonable care in maintaining the premises in a reasonably safe condition and to have given the plaintiff timely notice or warning of latent and concealed perils "known to the defendant, or which by the exercise of due care should have been known to him, and which were not known by plaintiff or which, by the exercise of due care, could not have been known to him." This is an expression of the great weight of authority.
We think the evidence here wholly failed to establish any legal liability on the defendant for the very obvious reason that the plaintiff, a man experienced and well versed in construction, admitted that he made a visual inspection of the construction and it appeared perfectly sound to him. If the structure appeared to be sound to the plaintiff, how can it be successfully contended that the defendant who had nothing to do with its original construction and who had not altered or changed it, could have discovered the defect except by completely tearing down the structure and examining it, which under all of the authorities he is not required to do.
It was stated in Hall v. Holland, supra, that "an independent contractor has the status of a business visitor, or invitee, upon the premises." The quoted language is an entirely correct statement of the law. But when the evidence shows that an invitee goes beyond the limits of the invitation, no obligation is imposed on the owner to keep the premises in a safe condition for the benefit of the user for uses outside of the scope of the invitation. 65 C.J.S., Negligence, § 49, page 541. In this case while the contractor was an invitee upon the premises where he was admitted to perform the work, his invitation as an invitee did not include the right to use a structure inside the building obviously not designed to be used to support workmen or great weights.
This general principle was recognized and discussed in Corrao v. West Jersey Corporation, 13 N.J. Super. 342, 80 A.2d 439, 442, where in upholding a judgment rendered in favor of an invitee the court said:
"The case is not within the line of cases relieving a landlord of liability as a matter of law when the structure which collapses from the weight or pressure exerted upon it by the person injured was obviously not a structure designed for such use."
Further illustrative of this proposition is the case of Davis Bakery, Inc., v. Dozier, 139 Va. 628, 124 S.E. 411, 414, where in passing upon a very similar situation the court there said:
"* * * if it had been in the contemplation of the parties that the scaffold should have been used as a means of access to the roof, or if it had been the only means, or if custom had warranted its use, then the plaintiff would have been an invitee, present for the common interest and mutual advantage of the parties, and entitled to recover. An invitation will usually be inferred *253 when one is present under such conditions."
Furthermore, the court in that case said:
"We have no difficulty in reaching the conclusion that, while Dozier was on the roof as an invitee, he did not go upon the skylight in that capacity, and certainly he was not invited to go upon it and take his helper with him, and this, notwithstanding the fact that it might have been more `convenient' for Dozier to do so than to do his work from the roof. * * * The court will not assume an invitation was extended to the plaintiff to do work in a dangerous way, when it was possible to follow another method involving no danger at all."
Another statement in Davis Bakery, Inc., v. Dozier, supra, particularly applicable to this case with reference to the quotations herein set forth from the injured employee that the roof looked safe to him is the following additional quotation from that opinion:
"An ordinary inspection of this roof and skylight would have revealed no defect; this is the plaintiff's own statement, and so failure to make an inspection which would have revealed nothing adds no liability." (Italics added.)
See also, for a further discussion of this same principle, Saunders v. Eastern Hydraulic Pressed Brick Company, 63 N.J.L. 554, 44 A. 630, 76 Am.St.Rep. 222.
We now turn to Bottom v. Rank, supra [70 So.2d 832]. The facts in that case are strikingly parallel to those shown in this record and the principle of law there announced clearly requires us to set aside the judgment from which this appeal is prosecuted. In that case the defendant called a contractor to examine his air conditioning system for the purpose of suggesting something that could be done to remove the excessive heat from the units. The contractor was shown the room in which the equipment was located and he entered the room unaccompanied "`to go ahead and do whatever (he) wanted.'" The units were supported by a defective support but the contractor after examining it stepped upon the support and was taking measurements when the scaffold gave way and he fell. This Court in affirming a summary final judgment in favor of the owner stated:
"After inspecting and testing the board the plaintiff on his own volition and without suggestion from anyone decided to make use of the board to reach the air conditioning units, instead of using some safer method. Merely because the plaintiff elected to use the facilities of the defendants instead of his own, the plaintiff cannot in the absence of an agreement cast the burden of the consequences of his acts upon the defendants."
Appellee insists that the facts in this case present a jury question and for that reason the judgment should not be disturbed. We cannot agree with this contention because the undisputed facts in the record failed to establish any legal liability on the part of the defendant as a matter of law. Under such circumstances, it was the duty of the lower court to take the case from the jury and direct a verdict for the defendant.
Reversed with directions to set aside the judgment and to grant the motion of defendant for the entry of a judgment in its favor.
ROBERTS, C.J., and THOMAS and HOBSON, JJ., concur.