Joseph Rudolph HAMILTON, Appellant,

v.

ARMSTRONG CORK COMPANY, Appellee.

No. 23275.

United States Court of Appeals
Fifth Circuit.

Jan. 5, 1967.

Rehearing Denied Jan. 27, 1967.

Frederic G. Levin, Jack S. Graff, Pensacola, Fla., Levin, Askew, Warfield, Levin & Graff, Pensacola, Fla., for appellant.

Robert P. Gaines, Pensacola, Fla., Beggs, Lane, Daniel, Gaines & Davis, Pensacola, Fla., for appellee.

Before BROWN, BELL and DYER, Circuit Judges.

DYER, Circuit Judge:

From a summary judgment for the defendant Armstrong Cork Company, the plaintiff Joseph Rudolph Hamilton appeals. Concluding, as we do, that there is a factual issue to be submitted to a jury we reverse.

In January, 1963, Armstrong contracted with the electrical contracting firm of Maultsby and Sutton to remove two poles and some power lines from Armstrong's property. The lines extended across three creosoted poles. Hamilton, an employee of the independent contractor and an experienced lineman, was removing the wires from his position on top of the pole which was to remain in the ground, when the pole broke at or below the ground level and fell, causing Hamilton's injuries.

Armstrong employs about four hundred and fifty persons at its manufacturing plant, forty eight of whom are maintenance men working under a plant engineer, a general foreman, and three foremen. It owns and maintains on its premises approximately fifty creosoted poles which are used to carry electrical wires.

Prior to the accident no inspection of the pole in question, or for that matter any of the poles, had been made by Armstrong, so it was unaware of the rot inside the pole. In order to determine whether a pole has a rotten core at or below ground level it is necessary to dig around the pole and then use a screwdriver or some other instrument to bore into the pole. Before climbing the pole Hamilton did not conduct a boring test but made a sounding test by kicking the pole. Armstrong's maintenance department is staffed by men who do preventative maintenance inspections. While it did not occur to the plant maintenance engineer to have one of his men check the poles, the men had the ability to determine whether a pole was safe or not.

The District Judge ruled, as a matter of law, that there was no affirmative duty upon the owner to check for rot.

■ It is settled law in Florida that an owner is under a duty to use reasonable care in maintaining his premises in a reasonably safe condition and to give timely notice or warning of latent and concealed perils known to the owner, or which by the exercise of due care should have been known to him, and which are not known to an invitee or which by the exercise of due care could not have been known to him. Hall v. Holland, Fla.1950, 47 So.2d 889; Hickory House v. Brown, Fla.1955, 77 So.2d 249. This duty is the same whether the invitee be there as the employee of the owner or as the employee of an independent contractor. Hall v. Holland, supra; Hickory House v. Brown, supra.

Hamilton relies on Peninsular Telephone Co. v. Dority, 1937, 128 Fla. 106, 174 So. 446, where a lineman employee of the telephone company brought an action against his employer for injuries sustained when a pole, upon which he was repairing a line, fell because of rot beneath the surface of the ground. In affirming a judgment for the plaintiff the court said:

"In performing his duty as a lineman, the law required him to make such reasonable inspection of each pole he climbed as was necessary or appropriate to discover defects, if any, in the pole that would make it unsafe to climb and work upon. The plaintiff made reasonable inspection of the pole that was defective before he climbed it * * *. But the defect in the pole was 5 to 9 inches below the surface of the ground; and it is not shown that the plaintiff was required to inspect the pole below the surface of the ground." Id. at 449.

The Court further stated:

"It clearly was the duty of the employer to exercise due and reasonable

care and diligence to have the pole in a safe condition for the lineman's work on it * * *." Ibid.

Armstrong argues, and the district court found, that *Peninsular* must be distinguished from the case at bar because it arose under Florida's Hazardous Occupation Act,[1] whereas this case did not. While this Act eliminates certain defenses and effects other changes not here pertinent, it does not change the duty of ordinary and reasonable care.

Relying on Quinnelly v. Southern Maid Syrup Company, 1964, Fla.App., 164 So. 2d 240, the District Judge found, and Armstrong now earnestly submits, that the test in cases of this kind is one of "superior knowledge" and that Hamilton and his employer had knowledge superior to that of Armstrong about rotten poles. In *Quinnelly* the court dismissed an amended complaint which alleged, *inter alia,* that plaintiff while working for an independent contractor on defendant's property was injured when the boom of a truck-crane came in contact with overhead energized wires. After stating the duty owed to an employee-invitee or a business-visitor invitee as decided in *Hall* and *Hickory House* the court added:

> "An ever underlying principle in all of these cases, before a defendant is held liable, is a showing by proper allegations of superior knowledge of the danger on the defendant's part." 164 So.2d 242.

In *Quinnelly* the defendant did not own, maintain or control the instrumentality which caused the harm, and the danger was open and obvious— thus the defendant was not charged with superior knowledge. This, of course, is not to say that the converse may not be so, or that unexcused ignorance may be asserted as a defense in a "superior knowledge test" case.

The superior knowledge principle adverted to in *Quinnelly* was simply another way of stating the established Florida rule in cases of this kind. It obviously neither added to nor changed the measure of duty owed by an owner. It did not refer to *abstract* superior knowledge. It did not qualify *Peninsular, Hall* or *Hickory House.*

We hold that the facts made out a jury question as to whether the defendant was negligent under the circumstances of this case. It was error to dispose of the case by summary judgment. The judgment of the district court is reversed and the cause is remanded for further proceedings not inconsistent herewith.

Reversed and remanded.

---

1. Chapter 769, Florida Statutes, F.S.A.