HARRIS, Judge.
In 1988, Issa and Nasim Rassam had constructed a new home. They employed Scott Green Construction Company as the general contractor for their home. However, it is undisputed that the Kassams had the roof of their new home constructed by someone other than the general contractor. Mr. Rassam at the time worked for a British-owned hotel and there became familiar with a roofing contractor, Graves Construction, with whom he contracted. The construction of the home was completed without incident and the Ras-sams never experienced any roof problems until the incident involved in this action. *544 The only roof “repair” that the Kassams have undertaken since their home was completed was the replacement of the single tile damaged in this incident.
In 1996, plaintiff and three other young men were engaged in a venture in which they would drive through neighborhoods in their pick-up truck loaded with a pressure cleaner and solicit jobs cleaning roofs of houses that showed signs of dirt or mildew. On one such occasion, they appeared at the Kassam home and knocked on the door. Only Mrs. Kassam was at home. Mrs. Kassam agreed that she would pay the men $150 if they would pressure clean the tile roof. They immediately set to it.
Plaintiff had previous experience in cleaning roofs. He worked on the Kassams’ roof barefooted “because you could tell if it was slippery.” When he first got on the roof, he “overlooked [looked over?] the whole entire roof.” He (and another of the young men) examined the roof to see if there were any cracked tiles present. There were no cracked tiles and the roof looked in good condition insofar as their “inspection” could determine. Their process of cleaning had them first pressure clean an area and then walk on it. In this way, the dirt (or mildew) was first removed so that the tile was not slippery. After they had been on the roof for between a half-hour arid an hour, “a tile came loose” causing plaintiff to fall off the .roof of the house causing substantial injuries.
As he lay on the ground, plaintiff saw the tile was broken but believed that the tile came loose in one piece maybe because it was not properly nailed down. When asked why he thought the homeowners were responsible for his injury, plaintiff responded that the owners should have properly inspected the roof and gotten “quality work on [their] roof’ and they should have properly eared for their house.
The landlord or owner has a legal obligation to an invitee to use reasonable care in maintaining the premises in a reasonably safe condition and to give such invitee timely notice or warning of latent and concealed perils known to such owner or which by the exercise of due care should have been known to such owner if such defects were not known by the invitee and would not have been discovered by the invitee by the exercise of due care. Hickory House, Inc. v. Brown, 77 So.2d 249 (Fla.1955). The complaint herein alleged that the Kassams’ liability is based on the fact that they negligently maintained (not negligently constructed or negligently supervised construction) the roof “as a tile that was stepped on by plaintiff was not properly secured to the roof.” Plaintiff further alleges that this condition was either known by the Kassams or should have been so known.
The court granted summary judgment for the Kassams perhaps based on this language in Hickory House:
We think the evidence here wholly failed to establish any legal liability on the defendant for the very obvious reason that the plaintiff, a man experienced and well versed in construction, admitted that he made a visual inspection of the construction and it appeared perfectly sound to him. If the structure appeared to be sound to the plaintiff, how can it be successfully contended that the defendant who had nothing to do with its original construction and who had not altered or changed it, could have discovered the defect except by completely tearing down the structure and examining it, which under all of the authorities he is not required to do.
77 So.2d at 252.
The court in Davis Bakery, Inc. v. Dozier, 139 Va. 628, 124 S.E. 411, 414 (1924), a ease involving a similar issue, held: “An ordinary inspection of this roof and skylight would have revealed no defect; this is the plaintiff’s own statement, and so failure to make an inspection which would have revealed nothing adds no liability.”
There would be no question about the propriety of the summary judgment entered herein except that the record shows that there may have been unresolved discovery issues. There was substantial discovery in this case—motion for production of documents, interrogatories, and depositions. It appears that on October 15, the trial judge ordered the Kassams to answer certain inter *545 rogatories -within 15 days thereof. On November 22, plaintiff objected to proceeding with the upcoming hearing on the motion for summary judgment because he was unable to determine “who put the roof on the house.” We must decide whether a discovery violation under the facts of this case should defeat the summary judgment entered herein.
First, the summary judgment hearing was not held until December 2. It is possible that substantial compliance took place within that period. Second, the plaintiffs position before the trial court is that he wanted to know who put the roof on the house; the position argued before us was that he wished to know how to locate the roofing company. This is important because it is clear from the depositions that the plaintiff knew early on who the defendants contend the roofer was — Graves Construction.
Because the hotel in which the contact arose between Mr. Kassam and Graves went into bankruptcy and is no longer around and because Mr. Kassam believes that Graves also went into bankruptcy (at least according to Kassam the Graves’ former business office in Kissimmee is now empty), Kassam testified under oath that he is unable to give an address for Graves. The bank that financed the Kassam house some eight years earlier had been acquired by another bank and also was no longer in operation. Mr. Kassam did give the name of the organization that he believes acquired the former bank. The Kassams, who indicated that payment to Graves was made either through their bank or through their general contractor (who denied making the payments), did not maintain a construction file of their own. It appears, therefore, that unless the Kassams lied in their oral deposition, the answer to the interrogatories would have been of no assistance. If the Kassams could not give a satisfactory answer in their depositions, an alternative discovery procedure would not obtain a better answer. By no means are we excusing non-compliance with discovery or failure to comply with a court’s discovery order. But it appears that the trial judge, who did not enter the summary judgment until December 16, either believed that the discovery violation was harmless or that the Kassams had substantially complied with diseoveiy. Clearly the trial court had no concerns about the alleged discovery violation.
Finally, although at oral argument plaintiff took the position that he wanted to show that the Kassams either constructed the roof themselves by merely using laborers or employed an incompetent contractor -without providing reasonable supervision, that is not the basis of the complaint against the Kas-sams. Plaintiff alleged only negligent maintenance against the Kassams and there was never an attempt to amend the complaint against them either before the summary judgment or on a motion for rehearing. Nor is there anything in the record that would justify such amendment. There is absolutely nothing in the record to suggest that the Kassams themselves contracted labor for the construction of the roof. The general contractor’s affidavit substantiates in general the testimony of Kassam that he entered into an oral contract with a roofer he met through his employment. In so far as the contention that Kassam may have employed an incompetent roofer, plaintiffs testimony that he examined the roof some eight years after its completion and found no signs that the tiles were out of alignment, no visibly loose or missing tiles, no broken or cracked tiles, and nothing that indicated a defect in the tile roof, shows no record support to justify the contention.
In short, there is nothing in the record, particularly in light of the allegations against the homeowners, that will support a reversal of the trial court’s grant of summary judgment.
AFFIRMED.
PETERSON, J., concurs with result only.
GOSHORN, J., dissents with opinion.