Terrance I. POSTON, a citizen of Alaska, Appellant,

v.

The UNITED STATES of America, Hawaiian Electric Company, Inc., an Hawaiian corporation, and George Okano Electrical Service, Ltd., an Hawaiian corporation, Appellees.

No. 22051.

United States Court of Appeals Ninth Circuit.

May 21, 1968.

Rehearing Denied June 25, 1968.

Certiorari Denied Nov. 12, 1968.

See 89 S.Ct. 322.

See also D.C., 262 F.Supp. 22.

Joseph A. Ryan (argued), of Ryan & Ryan, Honolulu, Hawaii, for appellant.

Richard E. Stifel (argued), of Anderson, Wrenn & Jenks, Honolulu, Hawaii, for Hawaiian Electric Co., Inc.

Dennis O'Connor (argued), of Robertson, Castle & Anthony, Honolulu, Hawaii, for George Okano.

Yoshimi Hayashi (argued), U. S. Atty., Honolulu, Hawaii, for United States of America.

Before CHAMBERS, BARNES and HAMLIN, Circuit Judges.

HAMLIN, Circuit Judge.

This action was brought by plaintiff in the District Court for the District of Hawaii to seek recovery for personal injuries suffered by him as a result of a severe electrical shock received by him while working at the Kunia Communications Facility in the City and County of Honolulu, Hawaii. The complaint named the United States, the Hawaiian Electric Company, and George Okano Electrical Service as defendants. The district court had jurisdiction on the basis of diversity of citizenship, 28 U.S.C. § 1332, and the Federal Tort Claims Act, 28 U.S.C. § 1346(b). We take jurisdiction under 28 U.S.C. § 1291 et seq.

At the time of the accident, plaintiff was an employee of Reed & Martin International, Inc., a general contractor who had a contract with the United States Government to perform work for the Navy at their base in Kunia, Hawaii.

Plaintiff operated a backhoe, which apparently is a tractor modified to dig ditches. On September 10, 1964, plaintiff was told by his supervisor to deepen a trench that had originally been dug by Okano Electrical Service (Okano), a subcontractor of Reed & Martin. The trench ran along the side of an electrical metering installation. This installation consisted of an "H" frame made up of two utility poles, a platform, transformer, insulators and wires. The two poles were secured by two guy wires, one on each pole. The trench ran underneath the two guy wires. Plaintiff thought the guy wires would interfere with the operation of his backhoe, and he therefore asked the Okano superintendent, one Alfred Teves, "If I take the guy wire loose, will the pole fall down?" Teves answered, "No, take it out," and at the same time made a gesture moving his hand with his thumb up over his head. Teves then left. After lunch plaintiff borrowed some tools from some nearby workers and after removing a shield on the wire began to remove the guy wire from the anchor. The guy wire was attached to this anchor in the following manner: It was drawn through the eye of the anchor and the end was brought around and fastened to the wire itself by means of a clamp held together by three bolts; there was also some baling wire wrapped around the end of the wire to hold it in place.

Plaintiff testified that he had removed two of the three bolts and was leaning on the wire in the process of unwrapping the baling wire when he felt something give way and he saw a flash. The defendants offered evidence in their case to show that he had completely removed the guy wire from the anchor and was trying to hang the loose end over a nearby fence when the wire became energized. All parties agree that at some point the guy wire did become energized and as a result the plaintiff suffered severe burns.

At the conclusion of the plaintiff's presentation of his case, the judge granted defendant Okano's motion for a

directed verdict, but denied similar motions made by the other two defendants. After all of the evidence had been submitted, he granted defendant Hawaiian Electric's motion for a directed verdict. Since at that point the only remaining defendant was the United States, he properly dismissed the jury and himself decided that case on the merits. He made findings of fact and conclusions of law, and found for the United States. The plaintiff here appeals from all of these decisions.

## THE DIRECTED VERDICT FOR OKA-NO

At the conclusion of the plaintiff's presentation of his case, defendant Okano moved for a directed verdict, and that motion was granted by the district judge. Appellant gives two arguments as to why this was error: (1) He asserts that it was based upon a fact which was later found incorrect by the court; and (2) he argues that the judge improperly removed factual issues from the jury.

Appellant argues that while in directing the verdict in favor of Okano the trial judge relied upon the fact that the evidence of plaintiff showed that Poston had not removed the guy wire from the anchor at the time of the accident, later in the case, in finding for the United States, the judge found that Poston had removed the guy wire from the anchor prior to the accident. This variance is claimed by the appellant to be fatal.

■ We disagree that the trial judge based his decision to grant the motion for a directed verdict upon the fact that the guy wire had not been removed. While he did state at one point that the posture of the case at that time was that the plaintiff had not removed the wire from the anchor, his further discussion indicates that he found Okano not to be liable whether or not the wire had been removed. This was perfectly proper since the plaintiff had attempted to prove as part of his case that the wire had not been removed, and thus the trial judge was duty-bound to consider whether or not the jury could find liability if

that fact were true. See, e. g., Shafer v. Mountain States Tel. & Tel. Co., 335 F.2d 932 (9th Cir. 1964).

■ Moreover, we find that the trial judge did not improperly remove factual issues from the jury by rendering a directed verdict. In our review we must consider the evidence in its strongest light in favor of the party against whom the verdict was rendered, and must give him the advantage of every fair and reasonable intendment that the evidence can justify, even though contrary inferences might reasonably be drawn. Continental Ore Co. v. Union Carbide & Carbon Corp., 370 U.S. 690, 82 S.Ct. 1404, 8 L.Ed.2d 777 (1962); Wilkerson v. McCarthy, 336 U.S. 53, 57, 69 S.Ct. 413, 93 L.Ed. 497 (1949); Case-Swayne Co. v. Sunkist Growers, Inc., 369 F.2d 449 (9th Cir. 1966); Lucero v. Donovan, 354 F.2d 16 (9th Cir. 1965); Girardi v. Gates Rubber Co. Sales Div., Inc., 325 F.2d 196, 202 (9th Cir. 1963). Viewing the evidence in that light, the plaintiff still completely failed to show any facts which would give rise to a duty owed by Okano to him. There were no facts upon which a jury could reasonably infer that there was an employer-employee relationship between the plaintiff and Okano: Plaintiff's employer had instructed him only to find out from Okano where the trench was to be dug; the Okano superintendent did not order him to remove the guy wire, nor could he have so ordered; the removal of the guy wire was the idea of the plaintiff and he did it on his own volition, not pursuant to the instructions of the Okano superintendent. Further, the plaintiff's evidence failed to establish that Okano was an owner or occupier of the land. Indeed, the only relationship shown by the plaintiff's case was that in response to plaintiff's question the Okano superintendent had told him that if the guy wire were removed the pole would not fall down. On these facts the judge was perfectly correct in finding that there was no duty whatsoever owed by Okano to the plaintiff. While the question of the relationship between two parties is

one of fact, whether or not that relationship gives rise to a duty is a question of law. See Prosser, Law of Torts, 207 (3rd Ed. 1964).

■■ Even if we assume that by the act of volunteering some information about the safety of removing the guy line Okano assumed a duty of due care toward the safety of the plaintiff, there still could be no finding of liability. If such a duty existed, it could not have amounted to more than a duty to warn the plaintiff there was high voltage electricity in the wires connected to the top of the poles. Yet this fact was, or should have been, as obvious to the plaintiff as it was to Okano. The law does not impose a duty to warn of an obvious danger. See Prosser, Law of Torts, 403 (3rd Ed. 1964); see generally, Keeton, Personal Injuries Resulting From Open and Obvious Conditions, 100 U.Pa.L.Rev. 629 (1952). A photograph of the location (Exhibit G7), which is shown here clearly indicates what was obvious to both Teves and the plaintiff. That there was

a danger in removing the guy wire of that wire becoming electrified was as foreseeable to the plaintiff himself as it was to Okano's employee. Okano can not be said to have failed to warn the plaintiff of an unforeseeable or hidden danger.

Since the plaintiff failed to establish any facts upon which a duty to warn could be imposed upon Okano; and since even if there was a duty it was only to warn of an obvious danger, and thus its breach could not have proximately caused the injury, we hold that the trial judge was correct in directing a verdict in favor of Okano.

## THE DIRECTED VERDICT FOR HAWAIIAN ELECTRIC

At the conclusion of the presentation of all of the evidence Hawaiian Electric moved for a directed verdict. The trial judge granted this motion on the grounds that the evidence failed to show that Hawaiian Electric was negligent, and that the plaintiff was guilty of negligence which was the proximate cause of his injury. Appellant here alleges, for numerous reasons, that this was error. We disagree.

The evidence showed, beyond dispute, that Hawaiian Electric owned the three wires coming into the electrical installation here in question and the transformer sitting on the platform between the two poles. See Exhibit G-7 pictured in the margin. They also owned and controlled the electricity flowing through the three wires up to the insulators at the top of the poles where there was located an "air switch." Once the current passed through that switch it became the property of the United States. The electric company did not own nor control the poles, the three wires beyond the insulators, the guy wires holding the poles in

place, nor the land upon which the installation was situated; nor did they own or control the land upon which the plaintiff was injured.

The trial judge determined, taking the most favorable inferences from these facts, that Hawaiian Electric could not be found negligent. While the trial judge found that as a matter of law Poston was not the invitee of Hawaiian Electric, he could still have directed a verdict in favor of Hawaiian Electric had he not so found. Assuming, arguendo and without deciding, that Poston was an invitee of Hawaiian Electric, it would have owed him the duty of reasonable care for his safety. Since the evidence completely fails to establish that Hawaiian Electric had not used reasonable care in the construction or maintenance of the Kunia facility, the sole question in this case is whether or not the duty of reasonable care includes the duty to warn of the existence of high voltage electricity in their wires— the only "dangerous condition" which is established by the evidence. We hold that it does not. A land occupier is not required to protect an invitee from dangers which are known to him or which are so obvious and apparent to him that he may be reasonably expected to discover them. Prosser, Law of Torts, 403 (3rd Ed. 1964). In this case the evidence, particularly the photographs of the accident site, shows the exact situation in reference to high voltage electricity being present. A warning sign could have done no more.

Moreover, even if Hawaiian Electric had a duty to warn, it could only extend to a warning that their wires and transformer contained high amounts of electricity.[1] If, as plaintiff asserted,

---

[1]. It might be argued that they were negligent in supplying the United States with high voltage electricity, knowing that the United States had not posted warning signs under the theory that the supplier of electricity is negligent if he knowingly supplies current to a defective installation. See Union Pacific R.R. Co. v. Johnson, 233 F.2d 427 (9th Cir. 1956), rev'd

per curiam, 352 U.S. 957, 77 S.Ct. 359, 1 L.Ed.2d 316 (1957); Union Pacific R.R. Co. v. Johnson, 249 F.2d 674, 675 (9th Cir. 1957). We reject this argument, not being willing to extend the concept of defective equipment to include equipment with its only possible defect being the absence of a warning sign. Moreover, in light of our determination

he did not unfasten the guy line, the evidence shows that it was physically impossible for it to have become energized from contact with any wires owned or controlled by Hawaiian Electric, and thus their failure to warn could not possibly have been the proximate cause of his injury.

 If, on the other hand, the plaintiff did remove the guy wire and thus bring it into contact with Hawaiian Electric's wires, the judge quite properly found that he would be guilty of contributory negligence. In making this finding, the judge was not invading the province of the jury, but rather stating the clear proposition that under any possible interpretation of the facts, no liability could be predicated upon Hawaiian Electric. He was not, as appellant argues, finding as a fact that the plaintiff did remove the guy wire. Rather, he held that if the guy wire was not removed Hawaiian Electric could not be held for negligence; but that *if* it was removed in such a manner as to come into contact with Hawaiian Electric's wires, then the plaintiff was guilty of contributory negligence as a matter of law. This was a perfectly proper holding and we find no error. We therefore affirm the directed verdict in favor of Hawaiian Electric.

## THE JUDGMENT FOR THE UNITED STATES

After dismissing the jury, the trial judge himself decided the tort claim action against the United States on the merits. He made thorough findings of fact and conclusions of law, and rendered a judgment in favor of the United States. Appellant appeals from this judgment.

that the absence of a warning sign was not the proximate cause of plaintiff's injury (see discussion infra), Hawaiian Electric would not be liable to the plaintiff even if they were found to have been negligent in this regard.

 The appellant challenges only one of the judge's findings as not being supported by the evidence. The challenged finding was that at the time of the accident plaintiff had removed the guy wire from the anchor. Upon a careful review of the record we find that this finding was supported by substantial evidence.

However, even were we to have concluded that it was not, the posture of the case would remain the same. That finding goes only to the issue of Poston's negligence, and since the court also found that the United States was not negligent, his finding of Poston's negligence was superfluous. Moreover, the finding of Poston's negligence is supported by the undisputed fact that he did tamper with and loosen the guy wire, while charged with knowledge of the presence of high voltage electricity in the installation.

 Appellant also argues that the trial judge erred by improperly removing the Hawaiian Safe Place to Work Law from the case. Assuming, without deciding, that this was error,[2] we find that it was harmless error. Plaintiff offered no evidence to show that the working conditions were in any way unsafe except for the fact that the government failed to post signs warning of the presence of high voltage electricity. We need not decide whether or not such signs are required by the Act, since the court clearly gave consideration to this "unsafe" condition. In so doing, the court found that it was not the absence of a sign which led to plaintiff's injury, but his disregard of the obvious danger from the presence of electricity in the installation.

2. There is, however, considerable support for the proposition that the Hawaiian legislature did not include the United States Government among the employers covered by the "Safe Place to Work Law."

We have examined all of appellant's other allegations of error and find them totally without merit. We therefore affirm the decision of the trial court.[3]

---

3. Defendant Hawaiian Electric filed a cross-appeal in this case challenging the trial judge's denial of its counterclaim against defendant Okano for contribution. In light of our disposition of this case, this question is rendered moot, and we therefore affirm the trial judge's denial of the counterclaim.