TUCKER, Judge.
This suit stemmed from an accident allegedly experienced by the plaintiff, Theodore W. Vegh, about 11:30 P.M. on December 3, 1967 at the plant of the defendant, Kaiser Aluminum and Chemical Corporation, in Grammercy, Louisiana. The plaintiff was employed by Hendy International as a port captain. His duties generally entailed checking three bauxite ore ships owned by Sequoia Corporation as these ships would dock at the Kaiser plant with their cargoes of bauxite, emanating from Jamaica. Vegh would investigate the seaworthiness of the three vessels, make minor repairs and arrange for corrections which required more specialized attention. When a ship reached Grammercy, Vegh would travel by car from his home in Baton Rouge to the Kaiser dock, and he would work some fourteen to sixteen hours in the discharge of his duties on the day the ship arrived. He was paid a monthly salary of $1,000.00. He had commenced working at the Gram-mercy site on October 15, 1967, and he estimated that he traveled to the dock on an average of once every week or ten days. Kaiser had a contract of charter with the owner of the ships, Sequoia Corporation, for the hauling and delivery of the bauxite to Grammercy and to its plant in Baton Rouge from Jamaica. Hendy International had a separate contract with Sequoia, whereby Hendy would, in a representative capacity, furnish the services of a port captain and attend to the making of repairs to and corrections of the ships, with a dry docking of the vessels occurring about once yearly for major overhauling.
On the night in question, December 3, 1967, the plaintiff had worked at his job during the entire day, and as he drove away from the dock, he came to a place after leaving the ramp, where there was a broad expanse of concrete and a water hose which he had been accustomed to using in washing from his car the accumulation of bauxite dust which covered his vehicle on such occasions. Vegh testified that this particular locus had been suggested as a convenient place to hose off his automobile, and that he had observed Kaiser employees and others with business on the plant site make use of this area for hosing down their vehicles on numerous occasions in advance of leaving the plant premises. The testimony of other witnesses is in decided conflict with that of Vegh with respect to their having instructed plaintiff to use this watering place. We do not think this difference is crucial to the decision here.
It clearly appears that the stated area is adjacent to a transfer point in which the bauxite ore transfers from one conveyor belt to another belt moving in a different direction, resulting in their being an excessive accumulation of the red dust at this junction. A portion of the concrete slab near this transfer point and where the hose is located is on a slant, and on the bottom of the incline there is a grating through which the wetted-down dust or mud drains or escapes into a “sump”, and the accumulation of this mud material is periodically removed and hauled away by the use of a back-hoe. The plant superintendent testified that the concrete apron was supposed to be cleaned off at the beginning of each eight hour shift, but it was possible that occasionally the time gap between clean-up jobs on the concrete apron would reach sixteen hours. In any event the testimony indicates positively that the concrete slab at the subject point was always wet.
Mr. Vegh drove his car off the roadway onto this concrete area, and he noted when he alighted from his car that his foot went into the bauxite mud some four to five inches. He apparently managed to hose down one side of his car without incident, but, while in the process of maneuvering to the other side of the vehicle, he spreadeagled with one of his feet going in one *582 direction and the other in the opposite direction. The plaintiff alleges that his knee was severely injured when he fell, and that as a result of the trauma, causing cartilage and ligament damage, he was suffering from a medical condition commonly termed “a football knee”, resulting in a 20% permanent disability, which effectively rendered him unemployable as a port captain. While he was not discharged by Hendy until June of 1968, he claims that the only reason for the discharge was his knee injury and the resulting disability to properly perform his job. Vegh claims that he was an invitee on the plant premises on all of the occasions when he was there, and especially at the time when the accident happened. He urges that his injuries and resulting disability arose solely from the negligence of the defendant in permitting the dangerous conditions to exist whereby the wetted down bauxite dust accumulated to excess, and posed an unusual danger to an invitee such as plaintiff, and also that the defendant posted no warning signs to put persons on notice of the unusual dangerous and hazardous conditions created by the bauxite mud among other contentions.
Plaintiff has appealed from the judgment of the lower court dismissing his suit for Two Hundred Fifty and no/100 Thousand ($250,000) Dollars on account of his bodily injuries, pain and suffering, loss of wages, future advances, bonuses and income. We concur in the holding of the trial judge.
We take note of the jurisprudential rules with regard to determining the duties imposed upon an owner or occupant of property in protecting a trespasser, licensee, or invitee from injury while on the property. The varying degrees of care owed to persons in these three categories are succinctly stated in the cases of Alexander v. General Accident Fire & Life Assurance Corp., 98 So.2d 730 (La.App. 1st Cir., 1957 (Writ denied); Payton v. St. John, 188 So.2d 647 (La.App. 2d Cir. 1966) and Cothern v. LaRocca, 221 So.2d 836 (La.App. 4th Cir. 1969), and numerous other decisions. The plaintiff entertains no doubt that he occupied the status of an invitee when he had the accident, because he was customarily permitted access to the plant facilities where he was engaged in his duties of checking the condition of the three ships which were hauling the bauxite to the defendant’s plants. He, therefore, reasons that his work was to the mutual advantage of Kaiser. The defendant contends that plaintiff’s position was not more than that of a licensee insofar as its plant premises were concerned, and, if Vegh filled the criteria of an invitee on the regularly used portion of its plant grounds, such invitee classification did not follow him onto the concrete apron at the site of the transfer point. While we think parts of the evidence support defendant’s analysis, we hold that the weight of the proof establishes that the plaintiff was an invitee on the premises.
As an invitee the plaintiff was owed the duty of reasonable and ordinary care by the defendant in protecting him from injury, including the prior discovery of reasonably discoverable conditions that may be unreasonably dangerous and correction thereof, or a warning to the invitee of the danger—cases cited supra.
The evidence in this record is completely devoid of proof that the defendant failed in its duties of ordinary and reasonable care to the plaintiff at the time of his accident. Captain Olausen and Howard Hansen, Kaiser employees, denied categorically plaintiff’s testimony that they had pointed out to him that the subject concrete apron was available and could be used for hosing down his automobile. A witness for the plaintiff, Albert E. Fortune, testified that when he used the water hose at this place he would stop his truck on the roadway and bring the hose back to the truck rather than drive the truck onto the concrete into the middle of the wet bauxite. The plaintiff admitted that he knew the bauxite material was very slippery when wet. Initially he testified that the light *583 ing at the accident point was rather dim, though he later asserted there were four or five 300 watt bulbs in the vicinity. Vegh finally stated that the presence or absence of adequate lighting had no hearing on the occurrence of his accident. The record reflects that the plant personnel was provided with several areas which were either wholly or partially designed for cleaning off vehicles. The plaintiff admits that he did not encounter new substances or conditions at the selected “wash off” site on December 3, 1967 then he had met on previous occasions. Under these circumstances it is difficult to perceive the merit in Vegh’s position that Kaiser had a duty to erect signs warning of the dangers attendant to the use of the subject place for the same or similar purposes for which he previously had used the same area on several occasions. The plaintiff simply did not need anyone to impart knowledge to him about the extremely slippery character of bauxite mud. He was completely aware of the properties of bauxite mud, and the extreme difficulty in maintaining one’s footing on a surface containing such material. The photographic evidence of the area in question particularly lends credence to this analysis.
The cases cited by plaintiff in brief, including Tewis v. Zurich Ins. Co., 233 So.2d 357 (La.App. 1st Cir. 1970); Ransom v. Kreeger Store, Inc., 158 So. 600 (La.App.Orl.Cir.1935) ; and Grigsby v. Morgan & Lindsey, 148 So. 506, 507 (La.App. 2nd Cir. 1933) are not apposite to the facts of the instant case for the reason that the cited cases dealt with landlord-tenant and customer-store owner situations. The relationship of the owner or occupant and the person using the premises who is damaged in the cited cases is substantially different from the status of the relationship between the parties here, and the rules propounded in the cited jurisprudence have little or nothing to do with the resolution of the problems here.
The nature of Kaiser’s plant operation, involving the removal of aluminum from the bauxite ore, presupposed the existence and accumulation of considerable bauxite dust throughout the entire area, which, when wetted down, created an especially slippery and treacherous substance. The danger of such muck in triggering slips and falls of persons treading thereon was well known and recognized by those generally in regular attendance at the plant facilities, and especially was the plaintiff, according to his own testimony, familiar with the hazard posed. This hazard was not an unusual one in degree, but rather a common and accepted danger which was not in any way concealed or hidden from plaintiff’s normal observation.
This court holds that the defendant was free from any fault or negligence in the accident experienced by the plaintiff, and we will affirm the judgment of the lower court at the appellant’s costs.
Affirmed.