Bernice M. STANLEY, etc., Plaintiff-Appellee,

v.

UNITED STATES of America et al., Appellees.

Appeal of MIDWEST CONSTRUCTION CO., INC., First Third-Party Defendant and Second Third-Party Plaintiff.

Bernice M. STANLEY, etc., Plaintiff-Appellee,

v.

UNITED STATES of America et al. Appellants.

Nos. 72–1354, 72–1355.

United States Court of Appeals, First Circuit.

Argued March 7, 1973.

Decided April 13, 1973.

John W. Ballou, Bangor, Me., with whom Mitchell & Ballou, Bangor, Me.,

was on brief, for Midwest Construction Co., Inc.

Ronald R. Glancz, Atty., Department of Justice, with whom Harlington Wood, Jr., Asst. Atty. Gen., Peter Mills, U. S. Atty., and Morton Hollander, Atty., Department of Justice, were on brief, for United States.

Thomas Schulten, Portland, Me., with whom Perkins, Thompson, Hinckley, Thaxter & Keddy, Portland, Me., were on brief, for Bernice M. Stanley.

Before ALDRICH, McENTEE and CAMPBELL, Circuit Judges.

ALDRICH, Senior Circuit Judge.

Plaintiff's intestate, Stanley, was killed when he fell from a platform inside a Navy antenna tower. Stanley was an employee of a subcontractor of Midwest Construction Co., which was engaged in painting a complex of low-frequency radio towers at Cutler, Maine. Plaintiff, barred by the receipt of workmen's compensation from suing Stanley's employer for negligence, brought suit against the government, alleging defective design of the tower. The government claimed over against Midwest, asserting its negligence and breach of its undertaking to "take proper safety . . . precautions to protect . . . the workers." The district court, in a comprehensive opinion, 347 F.Supp. 1088, found for the plaintiff in her suit against the government, and for the government against Midwest. Both defendants appeal.

The tower in question, No. S–O, is an elongated triangular prism, its three legs arising 979 feet from the apexes of a triangular base 12 feet on a side. The sides are skeletal, with a horizontal beam about every 12 feet, with a single diagonal cross of tie-rods, or windrods, so called, in the space between. The inside is empty, except that every 70 feet there is a triangular grating, or platform, 12′x12′x12′ with a 2′x3′ rectangular aperture, or cut-out, to afford access to a ladder which runs down the side to the platform next beneath. These apertures are staggered from platform to platform, as the ladder shifts from one side of the tower to another as one progresses from one platform to the next. Although there was no testimony on the subject, this seems an obvious safety feature, so that the platform at the base of the ascending ladder would be solid. The effect of this, of course, is to require everyone ascending or descending the tower to dismount the ladder and cross over at each platform. The principal purpose of the platform, apart from providing strength to the structure, is to serve as a place of rest. There are no guardrails around the cut-out, and none around the outside of the platform.

On the day in question Stanley and two other men were engaged in painting the tower, some 700 feet up. It was Stanley's second day on the job. He was 20 years old, and without experience or even training in high work. Because of his inexperience he was assigned to work from the platforms, which was thought to be safer. The other workers were a short distance above him, using simply the beams and windrods for support. They clambered about, applying the paint with a mitten. Stanley, having an easier foothold, was using a paint roller on a 6-foot rod, which required both hands. Shortly before the accident he was observed standing in a corner by one leg of the tower on an essentially triangular portion of the platform which was of a small area, because immediately in back of him was the ladder cut-out. He was reaching up with the roller and in no apparent difficulties. Shortly thereafter the other workers heard a clatter, that they took to be the fall of the roller and handle onto the platform, and they then saw Stanley in the air dropping down to the platform below. He died of a crushed skull.

The dispute at the trial revolved about two issues—whether the government was liable because of failure to supply guards to the ladders' cut-outs, and whether Midwest was liable for not taking precautions in view of the absence of such protection. The court found for the plaintiff against the government on the

issue of absence of guardrails, and for the government against Midwest on the ground that it should have provided Stanley with a safety belt and attachment, which, it found, would have served as an adequate substitute.

One of Stanley's co-workers testified, without contradiction, that the belt offered them by the contractor did not fit the ladder safety device, and was not usable for the work they had to do. No serious attack is made by anyone on the court's finding that a different belt should have been provided, or by Midwest on the court's finding liability over. Having in mind the contractor's general assumption of safety responsibility as part of its contract, an attack on either of these conclusions would be difficult to sustain. Midwest's basic position on appeal is that the government was not liable, and that accordingly Midwest was not. Concededly the conclusion follows if the predicate is correct.

Plaintiff's case against the government is based principally upon the testimony of her expert, one DeTarnowsky.[1] DeTarnowsky, relying upon a published American Standard Safety Code for Floor and Wall Openings, Railings, and Toe Boards, testified that good safety practice called for guardrails around the ladder cut-outs. Asked whether these apertures, and their consequent dangers, were not fully obvious,[2] he stated that a man engaged in painting might have his attention diverted, and temporarily "forget" their existence, or proximity. The court accepted this testimony, and on this basis found for the plaintiff.[3]

DeTarnowsky conceded that the absence of a guardrail did not constitute a danger to persons climbing the tower, who could be expected to pause on the platform only for a rest. For such persons there would be nothing to distract their attention from the existence of the aperture. To this must be added, because of the court's obligation to look at the record as a whole, United States v. United States Gypsum Co., 1948, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746, certain uncontradicted and inherently credible testimony introduced by the defendants that as to such other persons guardrails would have been affirmatively detrimental.

It appears that the towers are climbed with some regularity, as the Navy maintains a crew of four persons engaged in servicing the antennae and cables. Such individuals would have to pass through the gate at each platform as they passed from one ladder to the next to reach the top. Not only would this have been an inconvenience, but for them guardrails presented an actual danger. The government safety expert testified,

"I think that when they designed this, they considered that any man who used this platform and this ladder would be incumbered by either equip-

1. Midwest objected to the admission of De-Tarnowsky's testimony as a violation of the pre-trial order's commitment to give reasonable advance notification of any additional witnesses. We agree that the pretrial order was violated (see also F.R. Civ.P. 26(b)(4)), but this did not, per se, make the testimony inadmissible. Violation merely gives opposing counsel the opportunity to assert prejudice. Midwest might properly have asked for a continuance or, this being a non-jury case, for leave to put on a rebuttal witness later. It did neither.

2. See cases, post.

3. On the issue of proximate cause defendants argue at length that it was entirely speculative whether this was the reason that Stanley fell through the hole, suggest-

ing that he might equally have lost his footing, either when about to step onto the ladder, or while on the ladder itself. While it is true that it does not appear what Stanley was doing at the instant of fall, we consider that the very fact that there was a dangerous condition in his immediate presence warranted a finding that it was more likely that he succumbed to the danger than that he injured himself independently. Although Stanley was inexperienced, the evidence was that he was strong and without physical defects. Conversely, we need not discuss certain theories of government liability advanced by the plaintiff at the trial and rejected by the district court, one of which is reargued by the plaintiff. No error appears in this connection.

ment or by the roller which is a belt which sticks out in front of you, [a safety device used by Navy personnel, not the paint roller] as you know, that he would possibly hang that up on the railing and they decided, and I think properly, not to put a railing around the opening here."

While DeTarnowsky disagreed with the witness vis-a-vis a painter who worked on the platform, he did not contradict the witness' general conclusion that a guardrail would be an incumbrance to other users, nor, considering the evidence, and the physical structure, do we think he could have.[4] The expert testimony, accordingly, comes to this. The platform, without rails, was a dangerous place for a painter, particularly an inexperienced painter, to work. It was perhaps more dangerous than such a painter might appreciate. On the other hand, as to all other persons, who manifestly used the tower far more frequently, and who would have to traverse apertures 26 times for a single ascent, guardrails were not only not needed, but were to some degree contra-indicated. Furthermore, the special danger applicable to painters could, as the court found, be obviated by the use of safety belts with a tag line attachment.

■ The law of Maine is that a landowner is normally not liable to third parties for dangers that are open and obvious. Orr v. First National Stores, Inc., Me., 1971, 280 A.2d 785, 797. While there is an exception where obviousness may not be enough, Isaacson v. Husson College, Me., 1972, 297 A.2d 98, this is applicable only when the landowner has reason to believe that apparent obviousness will not be sufficient.[5] In the case at bar the government was not dealing with ordinary business invitees, but with specialists, of whom more could be expected. Cf. Gowdy v. United States, 6 Cir., 1969, 412 F.2d 525, cert. denied 396 U.S. 960, 90 S.Ct. 437, 24 L.Ed.2d 425;[6] Barrett v. Foster Grant Co., 1 Cir., 1971, 450 F.2d 1146. It had provided in its contract that the contractor should attend to safety. The court's "hold[ing] that the United States should reasonably have foreseen that painters, particularly if inexperienced, might lose both sight and consciousness of the nearby, unguarded ladder hole in the otherwise safe platform and back, trip or otherwise fall into it unless safety precautions were taken," is at best irrelevant in the absence of any evidence that the government should have supposed that the contractor would employ inexperienced workers on such a dangerous job and, more particularly, that it would fail in its obligation to take the safety precautions its workers required.[7]

■ The court's finding of negligence on the part of the contractor seems clear. With respect to the government, how-

---

4. The court properly rejected the government's argument that hand rails would have interfered, electrically, with the operation of the tower, but this was another matter.

5. Although not necessary in the present case, we believe the burden of establishing the exception should be substantial. Otherwise, since whenever a party has been injured the warning has in fact been ineffective, there will be a danger of the exception being found to swallow up the rule.

6. The district court distinguished *Gowdy* on the ground that there was there another, safer, way in which the plaintiff could have done his work. It failed to take, however, the next step and discuss that, vis-a-vis the government, there was a safer way the present plaintiff could have done his work, namely with a safety belt that was the contractor's responsibility. Governmental negligence is equally negated.

7. The Court found,
Negligence in selecting a contractor has apparently been abandoned in plaintiff's post-trial memorandum, and properly so in view of the absence of evidence. An allegation of the government's failure to maintain adequate supervision over the contractor has not been pressed. This again seems sensible in the absence of evidence of retained control beyond the right to inspect and object. *See* W. Prosser, Handbook of the Law of Torts § 71 (4th ed. 1971)." 347 F.Supp. at 1090.

ever, looking at "all the circumstances," as we are cautioned to do in Orr v. First National Stores, Inc., ante, 280 A.2d at 798, it seems peculiarly inappropriate to charge it for not installing guardrail protection for the occasional painter, who could be otherwise protected, at increased risk to the tower's regular users. The government did what it should, and cannot be held liable. There is, accordingly, nothing for which the third-party defendant must indemnify it, and both complaints must be dismissed.