**Hayes HITE**

v.

**MARITIME OVERSEAS CORPO-
RATION.**

**Civ. A. No. B-73-CA-354.**

United States District Court,
E. D. Texas,
Beaumont Division.

Aug. 16, 1974.

Harold J. Eisenman, Waldman & Smallwood, Beaumont, Tex., for plaintiff.

Ned Johnson, Benckenstein, Mc-Nicholas, Ball, Oxford, Radford & Johnson, Beaumont, Tex., for defendant.

## MEMORANDUM OPINION

STEGER, District Judge.

The plaintiff's cause of action for damages was filed, pursuant to diversity of citizenship requirements, against Maritime Overseas Corporation for injuries allegedly sustained on May 2, 1973. Mr. Hite was a ship repairman, working in the course and scope of his employment for Southern Valve & Machine Works, Inc., who had contracted to perform various repairs and cleanup work aboard the defendant's vessel, the SS OVERSEAS JOYCE, while she was docked at the Coastal Marine Services, Inc.'s facilities in Port Neches, Texas.

The following testimony was presented during the course of the plaintiff's case:

Mr. Hite boarded the SS OVERSEAS JOYCE between 5 and 7 p. m. on May 2, 1973 to perform cleanup work in the No. 8 tank of the vessel. The plaintiff, who was a pusher and in charge of the men in the tank, proceeded into the No. 8 tank with nine other employees of Southern Valve & Machine Works, Inc. There were no members or officers of the ship's crew that were present in the tank during the time that the plaintiff and his crew were performing the cleanup work. The vessel's logs demonstrate that the crew of the OVERSEAS JOYCE had been paid off at 5 p. m. on May 2, although there were various officers that remained aboard the vessel during the period of time in question.

Mr. Hite received a shock at approximately 11 p. m. from a defective drop cord that was attached to a vertical rod in the tank for illumination. The shock caused the plaintiff to fall between sixteen and forty feet to the bottom of the tank. Neither Mr. Hite nor his witness, Mr. Brooks, were able to testify as to the ownership of the defective drop cord. The evidence was clear that both Mr. Hite and Mr. Brooks knew that the drop cords that were being used aboard the OVERSEAS JOYCE were in a worn, frayed, and defective condition prior to Mr. Hite's fall. Mr. Brooks testified that there were actually visible raw wires showing through the insulation on the drop cord that shocked the plaintiff. He noticed this condition of the drop cord before the accident. Mr. Hite testified, during his deposition which is in evidence, that it was the duty of the electrician for Southern Valve & Machine Works, Inc. to check the light cords for defects before they were placed into the tanks. During the course of the trial, he changed this testimony to a presumption that it was the

electrician's duty to perform this inspection. There was no evidence produced during the course of the plaintiff's case to show that the drop cord in question was provided by any of the ship's officers or crew. There were no facts presented by the plaintiff that would support a jury finding that the officers or crew of the SS OVERSEAS JOYCE maintained any degree of control or supervision of the work being performed by the plaintiff during the course of the cleanup operation.

At the conclusion of the plaintiff's case, the defendant moved for a directed verdict contending that the Longshoremen's and Harbor Workers' Compensation Act Amendments of 1972 provide for the application of land-based negligence concepts to third party suits by ship repairmen against a vessel owner. The defendant argued that the consensus of the law of the various maritime states relating to the duty of care owed by the owner of a premise (vessel owner) to an independent contractor and his employees (business invitees) does not include the duty to warn said invitees of open and obvious dangerous conditions in the work area which said invitees knew or should have known existed upon the premise.

The plaintiff contends that maritime negligence concepts apply to this fact situation, to wit: that the defendant maintains a nondelegable duty to provide a reasonably safe place to work for those business invitees that board the vessel to perform contract work for the vessel owner. In essence, the plaintiff argues that the vessel owner maintains a duty to correct unsafe working conditions as they are created in the work area, and to inspect the equipment that is being used by said business invitees prior to and during the performance of their work. The plaintiff further contends that the defective light cord was in an open and obvious defective condition which the vessel owner knew or should have known existed prior to the plaintiff's injury. The plaintiff alleges that the defendant failed to warn the plaintiff about this condition or to eliminate the hazard.

This Court has been given the opportunity to judicially interpret the Longshoremen's and Harbor Workers' Compensation Act Amendments of 1972. In determining whether Congress intended third party litigation to be controlled by land-based or maritime principles of law, the Court has reviewed the Legislative History of the Act as stated in the Senate and House Committee reports. The 1972 Amendments, which were effective November 26, 1972, contain the following statutory language regarding third party litigation:

"Sec. 5(b) In the event of injury to a person covered under this Act caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 33 of this Act, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel. If such person was employed by the vessel to provide ship building or repair services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing ship building or repair services to the vessel. The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this Act."[1]

1. 86 Stat. 1251 (1972).

The Senate and House Committees provided the following comments relating to third party actions pursuant to Sec. 5(b):

"\* \* \* The Committee intends that on the one hand an employee injured on board a vessel shall be in no less favorable position 'vis a vis' his rights against the vessel as a third party than is an employee who is injured on land, and on the other hand, that the vessel shall not be liable as a third party unless it is proven to have acted or have failed to act in a negligent manner such as would render a land-based third party in non-maritime suits liable under similar circumstances." [2]

"The purpose of the amendments is to place an employee injured aboard a vessel in the same position he would be if he were injured in non-maritime employment ashore, insofar as bringing a third party damage action is concerned, and not to endow him with any special maritime theory of liability or cause of action under whatever judicial nomenclature it may be called, such as 'unseaworthiness', 'nondelegable duty', or the like."

"Persons to whom compensation is payable under the Act retain the right to recover damages for negligence against the vessel, but under these amendments they cannot bring a damage action under the judicially-enacted doctrine of unseaworthiness. Thus a vessel shall not be liable in damages for acts or omissions of stevedores or employees of stevedores subject to this Act . . . " [3]

█ It is apparent, from the review of the Senate and House Committee Reports, that it was the intent of Congress to provide longshoremen and ship repairmen with a new cause of action for negligence against a ship owner based upon traditional land-based negligence concepts in lieu of the application of the general maritime law remedies of negligence and unseaworthiness. It is equally apparent that Congress did not intend to discard all maritime principles as illustrated by the following language:

"\* \* \* In that connection, the Committee intends that the admiralty concept of comparative negligence, rather than the common law rule as to contributory negligence, shall apply in cases where the injured employee's own negligence may have contributed to causing the injury. Also, the Committee intends that the admiralty rule which precludes the defense of 'assumption of the risk' in an action by an injured employee shall also be applicable."[4]

This Court is of the opinion that Congress clearly intended third party suits to be governed by uniform land-based negligence concepts with the two above-mentioned maritime law exceptions. This Court must now determine which land-based negligence concepts are to be applicable to third party litigation pursuant to the Amended Act. Congress has requested, by the following Committee recommendation, that a uniform Federal law should be applied to this type of litigation:

"\* \* \* Finally, the Committee does not intend that the negligence remedy authorized in the Bill should be applied differently in different ports depending upon the law of the State where the port may be located. The Committee intends that legal questions which may arise in actions brought under the provisions of the law shall be determined as a matter of Federal law . . . " [5]

█ Although this case has been filed pursuant to diversity of citizenship requirements, and the plaintiff's complaint does not specifically plead for a maritime remedy,[6] this Court is un-

---

2. Senate Committee Report No. 92–1125.

3. House Committee Report No. 92–1441.

4. Senate Report, supra.

5. Senate Report, supra.

6. Defendant's motion to strike plaintiff's allegations of unseaworthiness was granted in a separate Memorandum Opinion and Order entered on April 30, 1974. D.C., 375 F Supp. 233.

willing to apply, as an "Erie Court", the Texas duty of care owed by the owner of a premise to an independent contractor and his employees. Since it was the Congressional intent to have land-based negligence concepts incorporated into a uniform Federal law applicable to third party injuries pursuant to the Amended Act, this Court has reviewed in detail the law of all maritime states in an effort to determine the general rule of law involving the duty of care that shall be owed by the vessel owner to business invitees. The Court has also considered the body of Federal law[7] developed in third party litigation involving vessel owners prior to Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946).

■ The specific issue in the case at bar is whether or not the defendant maintained a duty to warn the plaintiff of an open and obvious defective condition in the equipment being used by the plaintiff on the defendant's premises. A thorough research of Federal law,[8] when combined with a consensus of the law of the various maritime states, dictates that the following duty of care should be applicable to litigation resulting from injuries occurring subsequent to the effective date of the "Amended Act".

The owner of a premise who contracts with an independent contractor (business invitee) to perform services for the owner upon the owner's premises owes a duty to the independent contractor and his employees to exercise reasonable care to have the premise in a reasonably safe condition for use by the independent contractor and to give said contractor warning of any concealed or latent defects that are known by the owner and not by the independent contractor. The owner of a premise is under no duty to warn the independent contractor or his employees of dangers or open and obvious defects which are known to the independent contractor or his employees or which could be readily observed by said employees in the exercise of ordinary care.[9]

7. The Henry S. Grove, 22 F.2d 444 (D.Md. 1927); Munson Lines v. Newman, 24 F.2d 416 (C.A.5th 1918); The Richlieu, 48 F.2d 497 (C.A.4th 1931); Grays Harbor Stevedore Co. v. Fountain, 5 F.2d 385 (C.A.9th 1925); The Clan Graham, 163 F. 961 (D. Or.1908); 44 A.L.R. 1025 through 1041.

8. n. 7, supra.

9. See Green v. Reynolds Metals Co., 328 F. 2d 372 (5th Cir. 1964); Claybrooke v. Bently, 260 Ala. 678, 72 So.2d 412 (1954); Mc-Ree v. Woodward Iron Co., 279 Ala. 88, 182 So.2d 209 (1966); Hobbs v. Mobil Oil Corp., 445 P.2d 933 (Alaska 1968); DeVille v. Shell Oil Co., 366 F.2d 123 (9th Cir. 1966); Sullivan v. Shell Oil Co., 234 F.2d 733 (9th Cir. 1956), cert. den. 352 U.S. 925, 77 S.Ct. 221, 1 L.Ed.2d 160 (1956); Pauly v. King, 44 Cal.2d 649, 653, 284 P.2d 487, 489 (1955); Reboni v. Case Bros., Inc., 137 Conn. 501, 78 A.2d 887 (1951); Csizmadia v. P. Ballantine & Sons, 287 F.2d 423 (2d Cir. 1961); Vorous v. Cochran, 249 A.2d 746 (Del.Super.1969); Hickory House v. Brown, 77 So.2d 249 (Fla.1955); Hamilton v. Armstrong Cork Co., 371 F.2d 139 (C.A. Fla.1967); Emerson v. Holloway Concrete Products Co., 282 F.2d 271, cert. den., 364 U.S. 941, 81 S.Ct. 459, 5 L.Ed.2d 372 (C.A. Fla.1960); Hodge v. United States, 310 F. Supp. 1090, 1100 (M.D.Ga.1969), aff'd. & adopted, 424 F.2d 545 (5th Cir. 1970); Tyler v. Peel Corp., 371 F.2d 788, 790 (5th Cir. 1967); Poston v. United States, 396 F. 2d 103 (9th Cir. 1968), cert. den., 392 U.S. 946, 89 S.Ct. 322, 21 L.Ed.2d 285, rehearing den. 393 U.S. 1072, 89 S.Ct. 724, 21 L.Ed.2d 717; Salim v. United States, 382 F.2d 240 (5th Cir. 1967); Vegh v. Kaiser Aluminum & Chemical Corp., 259 So.2d 580 (La.App. 1972); Stanley v. United States, 347 F. Supp. 1088 (D.C.Me.1972); aff'd., Stanley v. United States, 476 F.2d 606 (1st Cir. 1973); Orr v. First National Stores, Inc., 280 A.2d 785, 797 (Me.1971); LeVonas v. Acme Paper Board Co., 184 Md. 16, 40 A.2d 43 (1944); Wurz v. Abe Pollin, Inc., 384 F.2d 549 (4th Cir. 1967); Burr v. Mass. Elec. Co., 356 Mass. 144, 147, 248 N.E.2d 492, 495 (1969); Barrett v. Foster Grant Co., 450 F.2d 1146 (1st Cir. 1966); Jackson Ready-Mix Concrete v. Sexton, 235 So.2d 267 (Miss.1970); Braswell v. Economy Supply Co., 281 So.2d 669 (Miss.1973); MacLean v. Parkwood, Inc., 247 F.Supp. 188 (D.C.N.H. 1965), aff'd, 354 F.2d 770 (1st Cir. 1966); Partin v. Great Atlantic & Pacific Tea Co., 102 N.H. 62, 149 A.2d 860 (1959); Wolczak v. Nat. Elec. Prod. Corp., 66 N.J.Super. 64, 168 A.2d 412 (N.J.Super.1961); Mergel v. Colgate, 41 N.J.Super. 372, 125 A.2d 292

The facts, as presented in the plaintiff's case, could leave no doubt in the minds of the jury that the drop cord that shocked the plaintiff was in an open and obvious defective condition prior to the injury; therefore, the defendant owed no duty[10] to warn the plaintiff of said defective condition. Reviewing the testimony of Mr. Hite and his witness, Mr. Brooks, in a light most favorable to the plaintiff, the Court is of the opinion that reasonable minds could not differ in drawing this conclusion.

It is therefore, ordered, adjudged and decreed that defendant's Motion for Directed Verdict be in all things granted, and that plaintiff's cause of action is hereby dismissed with prejudice at plaintiff's cost.

---

(1956), cert. den. 22 N.J. 453, 126 A.2d 392 (1956); Employers' Mutual v. Di Cesare & Monaco, 9 A.D.2d 379, 194 N.Y.S.2d 103 (1959); Bidetto v. N. Y. City Housing Authority, 25 N.Y.2d 848, 303 N.Y.S.2d 695, 250 N.E.2d 735 (N.Y.1969); Brooks v. United States, 194 F.2d 185 (4th Cir. 1952); Spivey v. Babcock & Wilcox & Co., 264 N.C. 387, 141 S.E.2d 808 (1965); Wriglesworth v. Doyle, 244 Or. 468, 417 P.2d 999 (1966); Dutton v. Donald M. Drake Co., 237 Or. 419, 391 P.2d 761 (1964); Yowell v. General Tire & Rubber Co., 260 Or. 319, 490 P.2d 145 (Or.1971); Honea v. West Va. Pulp & Paper Co., 380 F.2d 704 (4th Cir. 1967); Bruno v. Pendleton Realty Co., 240 S.C. 46, 124 S.E.2d 580, 95 A.L.R.2d 1333 (1962); Delhi-Taylor Oil Corporation v. Henry, 416 S.W.2d 390 (Tex.1967); Pence Construction Corp. v. Watson, 470 S.W.2d 637 (Tex.1971); 40 Tex.Jur.2d 532; Hogge v. United States, 354 F.Supp. 429 (E.D.Va. 1972); Cannon v. Clarke, 209 Va. 708, 167 S.E.2d 352, 355 (1969); Culpepper v. Neff, 204 Va. 800, 804, 134 S.E.2d 315, 318 (1964); Thorpe v. Boeing Co., 5 Wash.App. 706, 490 P.2d 448 (1971).

10. Although this Court, in the case at bar, has not been called upon to decide various other negligence concepts that will apply in third party litigation involving different factual circumstances, this Court is of the opinion that the following consensus of State and Federal law should be applicable:

(1) The vessel owner is not liable to an independent contractor or his employees if the injury is caused by a condition that said contractor has been employed to correct. Whitlow v. Seaboard Air Line R. R. Company, 222 F.2d 57 (4th Cir. 1955); Florida Power & Light Co. v. Price, 170 So.2d 293 (Fla.1964); Campbell v. Rockland Trust Co., 311 Mass. 663, 42 N.E.2d 586 (1942); Gasper v. Ford Motor Co., 13 N.Y.2d 104, 242 N.Y.S.2d 205, 192 N. E.2d 163 (1963); Briere v. Lathrop Co., 22 Ohio St.2d 166, 258 N.E.2d 597 (Ohio 1970); Yowell v. General Tire & Rubber Co., 260 Or. 319, 490 P.2d 145 (1971).

(2) The vessel owner who retains no more right of control of the independent contractor's work than the necessity to secure satisfactory completion of the work owes no duty to protect the independent contractor and his employees from dangerous conditions arising during the performance of the work. See Kull v. Mid-America Pipeline Co., 476 F.2d 271 (5th Cir. 1973); Fisher v. United States, 441 F.2d 1288 (3d Cir. 1971); Brletich v. United States Steel Corp., 445 Pa. 525, 285 A.2d 133 (1971); Hodge v. United States, 310 F.Supp. 1090 (M.D.Ga. 1969); judgment aff'd. and opinion adopted, 424 F.2d 545 (5th Cir. 1970); City of Mount Dora v. Voorhees, 115 So.2d 586 (Fla.App.1959); Hobbs v. Mobil Oil Corp., 445 P.2d 933 (Alaska 1968); Rausch v. Julius B. Nelson & Sons, Inc., 276 Minn. 12, 149 N.W.2d 1 (1967).

(3) The vessel owner owes no duty to warn the independent contractor or his employees of dangerous conditions created on the vessel by said employees during the performance of their work. See Pence Construction Corp. v. Watson, 470 S.W.2d 637 (Tex.1971); Shell Chemical Co. v. Lamb, 493 S.W.2d 742 (Tex.1973); Fisher v. United States, 441 F.2d 1288 (3d Cir. 1971); Bidetto v. New York City Housing Authority, 25 N.Y.2d 848, 303 N.Y.S.2d 695, 250 N.E.2d 735 (1969); Wright v. Belt Associates, Inc., 14 N.Y.2d 129, 249 N.Y.S.2d 416, 198 N.E.2d 590 (1964).